UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ALEX HIXON, | ) |
| | ) |
| Plaintiff, | ) Jury Demanded |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| TENNESSEE VALLEY AUTHORITY | ) |
| BOARD OF DIRECTORS, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiff sues Defendant and shows the Court as follows:

### I. JURISDICTION

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 42 U.S.C. §2000e-5, 42 U.S.C. §2000e-16, and 28 U.S.C. §1331, to secure protection and redress for the deprivation of rights granted by the Rehabilitation Act, 29 U.S.C. §791, providing for legal and injunctive relief against disability discrimination in federal employment.

2. The acts complained of herein took place in Hamilton County, Tennessee. Thus, venue is proper under 28 U.S.C. §1391(b)(2).

### II. NATURE OF PROCEEDING

3. This is a proceeding for back pay and benefits due Plaintiff; for compensatory damages; for injunctive relief requiring Defendant to cease its discriminatory practices; prejudgment interest and attorney fees; and for such additional damages as may be necessary to effectuate the purposes of the Rehabilitation Act and to make Plaintiff whole.

### III. THE PARTIES

4. Plaintiff Alex Hixon is a resident of Dade County, Georgia.

5. Tennessee Valley Authority ("TVA") is an executive branch corporate agency and instrumentality of the United States of America. The head of TVA is its corporate board of directors, which is the proper party defendant to be sued pursuant to 42 U.S.C. §2000e-16(c) and 16 U.S.C. §831a. TVA conducts business and employs many individuals in Hamilton County, Tennessee.

6. As a federal agency, Defendant is subject to the Rehabilitation Act, 29 U.S.C. §701 *et seq.*, including the Act's prohibitions on disability discrimination, 29 U.S.C. §791, which provision also expressly adopts the provisions of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*

### IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

7. Plaintiff was employed by Defendant as a Chemistry Laboratory Technician at TVA's Central Laboratories in Hamilton County, Tennessee, from May 7, 2001 until his involuntary termination on June 2, 2014.

8. From August 2008 through his date of discharge, Plaintiff's immediate supervisor was Timothy Cofer.

9. Over the years, including through his date of discharge, Plaintiff's work performance was good.

10. For over 15 years, Plaintiff has suffered from chronic depression, anxiety, and insomnia (hereinafter referred to as "disability").

11. Plaintiff's disability substantially limits the normal functioning of his brain, the ability to sleep, and the ability to concentrate, as compared to individuals in the general population.

12. Over the years, Plaintiff has received psychological counseling and medical treatment for his disability.

13. Defendant was well aware of Plaintiff's disability. This awareness of Plaintiff's disability was known by Plaintiff's supervisor, as well as by TVA's Non-Nuclear Fitness for Duty ("FFD") personnel, including Dr. Stephen Adams and Candace Clepper.

14. In November 2013, Plaintiff's primary care physician, Dr. Charles Adams, lawfully prescribed the drug Marinol to treat Plaintiff's disability.

15. On December 23, 2013, Plaintiff underwent a random drug test at work. The drug screen result was positive for cannabinoid, prompting Plaintiff to inform TVA's Medical Review Officer that he was taking Marinol prescribed by his primary care physician.

16. The Medical Review Officer characterized Plaintiff's test result as "non-negative with safety concern" for the prescription drug Marinol.

17. Thereafter, with no explanation as to how Marinol posed a "safety concern", TVA's Senior Program Manager for FFD, Candace Clepper, ordered Plaintiff to submit to a medical examination by TVA's contract physician, Dr. Stephen Adams.

18. Prior to this medical examination, no one from TVA, including Plaintiff's supervisor, reported any concerns about whether Plaintiff could safely perform his job.

19. Dr. Adams' medical examination of Plaintiff, which occurred on January 6, 2014, was extremely broad and not narrowly-tailored to a determination of whether Plaintiff could safely perform his job while taking Marinol.

20. During the medical examination, Dr. Adams made a comprehensive inquiry into Plaintiff's overall health. While TVA had not expressed any concerns about Plaintiff's mental health or disability, Dr. Adams focused much of his examination on Plaintiff's depression and

recent treatment. As part of the medical examination, Dr. Adams reviewed Plaintiff's prior medical record, inquired about old injuries, and even probed into Plaintiff's social life and relationship with his girlfriend.

21. Not once during the medical examination did Dr. Adams ask questions about Plaintiff's Marinol use or how it affected his ability to do his job.

22. At the conclusion of the comprehensive medical examination, without any explanation, Dr. Adams declared that Plaintiff's "depression is not very well controlled and has not been for a long time." He recommended that Plaintiff was not fit for duty and that psychological testing was warranted.

23. TVA thereupon ordered Plaintiff to undergo psychological testing with TVA's contract psychologist, Dr. Gary Leigh.

24. Dr. Leigh initially evaluated Plaintiff on January 14, 2014. This examination included the administration of the MMPI-2 psychological test. Dr. Leigh re-evaluated Plaintiff three days later and concluded that Plaintiff was not fit to return to duty.

25. Before concluding that Plaintiff was unfit for work, Dr. Leigh communicated with three of Plaintiff's treating professionals – Dr. Charles Adams (primary care physician); Dr. Lon Glover (treating psychologist); and Dr. Brian Teliho (treating psychiatrist). All three of these medical professionals assured Dr. Leigh that Plaintiff was mentally fit for duty. However, Dr. Leigh ignored their input.

26. At no time in January 2014 did Dr. Leigh communicate with Plaintiff's supervisor or determine anything about Plaintiff's job duties or his job performance.

27. On January 21, 2014, TVA ordered that Plaintiff be withheld from duty because allegedly "available material found that [Plaintiff] did not meet the TVA standards for the ability

4

to work safely." As a result, Plaintiff was placed on unpaid leave, and he had to use his accrued paid leave time.

28. Thereafter, TVA ordered Plaintiff to undergo a substance abuse assessment through TVA's Employee Assistance Program ("EAP") as a condition for his return to work.

29. EAP arranged for Plaintiff to receive a substance abuse assessment, which ultimately determined no evidence of abuse. On March 5, 2014, EAP concluded that Plaintiff was fit to return to duty.

30. On March 17, 2014, Plaintiff was required to submit to a second comprehensive medical examination with Dr. Stephen Adams. Like the first medical examination, this examination was overly broad and unnecessarily intrusive. Dr. Adams probed into all of Plaintiff's medical conditions, including his disability. At the conclusion of this second medical examination, Dr. Adams recommended that Plaintiff be returned to work, provided that Plaintiff abstain from taking Marinol or any medications likely to impair function.

31. On March 20, 2014, TVA required Plaintiff to undergo a second psychological examination with Dr. Leigh.

32. In the meantime, all three of Plaintiff's treating professionals (Dr. Charles Adams, Dr. Lon Glover, and Dr. Brian Teliho) had clearly communicated with Dr. Leigh that Plaintiff was psychologically fit for duty and that Marinol did not present a safety risk. Despite these clear assurances, Dr. Leigh amazingly stated that he needed "further feedback" from Plaintiff's providers in order to determine whether Plaintiff could be cleared for duty.

33. For the first time ever, in late March 2014, Dr. Leigh decided to inquire about Plaintiff's specific job duties as a Chemical Laboratory Technician. Prior to this time, no one from TVA's FFD department had ever communicated with Timothy Cofer about Plaintiff's job duties.

5

Case 1:19-cv-00120-CEA-SKL   Document 1   Filed 04/30/19   Page 5 of 12   PageID #: 5

34. In making inquiries about Plaintiff's specific job duties, TVA claimed that it was clarifying how Plaintiff's job was characterized allegedly as "safety sensitive."

35. Despite being characterized by TVA as "safety sensitive," there was nothing particularly dangerous about Plaintiff's job duties.

36. Eventually, on April 3, 2014, Dr. Leigh recommended that Plaintiff was fit to return to work.

37. TVA, via approval from Ms. Clepper, returned Plaintiff to work on April 6, 2014 with the following three conditions: (1) that he provide a list of **all** medications that he was taking to FFD by the 15th day of each month; (2) that he refrain from using Marinol; and (3) that he continue to pass random drug and alcohol screenings.

38. The requirement that Plaintiff disclose **all** medications to the FFD department was made by Ms. Clepper, even though Drs. Adams and Leigh recommended that Plaintiff disclose only medications that are likely to impair function of his job.

39. From April 6, 2014 until June 2, 2014, Plaintiff worked as Chemical Laboratory Technician without any problems.

40. In fact, at no point in time during Plaintiff's last year of employment did Timothy Cofer ever believe that Plaintiff had work problems or behavioral issues, or that he was working in an unsafe manner, or that he posed a significant risk to the health or safety of himself or others. To the contrary, Mr. Cofer rated Plaintiff's work as satisfactory and noted that Plaintiff worked in a safe and conscientious manner.

41. Mr. Cofer was aware that Plaintiff worked alone, and this fact never concerned him.

42. Plaintiff never experienced any adverse effects from taking Marinol, and his Marinol use never interfered with his ability to work safely.

43. Despite the medical opinions of Dr. Charles Adams and Dr. Brian Teliho that Plaintiff's Marinol use was safe and medically prudent, Plaintiff thereafter refrained from using Marinol to treat his disability.

44. In late February 2014, Plaintiff filed an EEO complaint with TVA's Equal Opportunity Compliance department, alleging that he had been discriminated against because of his disability.

45. Both Candace Clepper and Timothy Cofer became aware of Plaintiff's EEO complaint by at least early May 2014.

46. Due to inadvertence, Plaintiff failed to report his list of medications to the FFD department on May 15, 2014. In late May, the FFD department notified Mr. Cofer that it had not yet received Plaintiff's list of medications. Mr. Cofer, in turn, relayed this message to Plaintiff, who immediately informed the FFD department that his medications had not changed since his return to work in April.

47. On June 2, 2014, TVA terminated Plaintiff's employment on the alleged grounds that Plaintiff had failed to report his list of medications to the FFD department on May 15.

48. At no point in time from January 2014 through his termination date did Plaintiff pose a significant risk to the safety of himself or others.

49. At no point in time did Plaintiff's use of Marinol interfere with his ability to perform his job safely.

## V. PLAINTIFF'S CLAIMS

<u>Count One: January 2014 Illegal Medical Examination</u>

50. Title I of the Americans with Disabilities Act ("ADA") prohibits employers from requiring medical examinations or making disability inquiries of employees unless such examinations

7

or inquiries are job-related and consistent with business necessity. 42 U.S.C. §12112(d)(4). The ADA's limitations on medical examinations and disability-related inquiries are incorporated by reference into the Rehabilitation Act. 29 U.S.C. §791(g).

51. TVA's mandated January 2014 medical examination of Plaintiff performed by TVA's contract physician, Dr. Stephen Adams, violated 42 U.S.C. §12112(d)(4) inasmuch as its scope was far-broader and more intrusive than necessary to be job-related and consistent with business necessity in legitimately determining whether Plaintiff could safely perform his job duties while taking Marinol.

Count Two: January 2014 Illegal Psychological Examination

52. TVA's mandated January 2014 psychological examination of Plaintiff performed by TVA's contract psychologist, Dr. Gary Leigh, violated 42 U.S.C. §12112(d)(4) inasmuch as the examination was not job-related and consistent with business necessity.

53. At the time of the psychological examination, TVA had no legitimate evidence – and certainly no significant evidence – that Plaintiff posed a direct threat to his own safety or the safety of others, or that Plaintiff could not safely perform his job duties.

Count Three: March 2014 Illegal Medical Examination

54. TVA's mandated March 2014 medical examination of Plaintiff performed by TVA's contract physician, Dr. Stephen Adams, violated 42 U.S.C. §12112(d)(4) inasmuch as its scope was far-broader and more intrusive than necessary to be job-related and consistent with business necessity in legitimately determining whether Plaintiff could safely perform his job duties.

Count Four: March 2014 Illegal Psychological Examination

55. TVA's mandated March 2014 psychological examination of Plaintiff performed by TVA's contract psychologist, Dr. Gary Leigh, violated 42 U.S.C. §12112(d)(4) inasmuch as the examination was not job-related and consistent with business necessity.

56. At the time of the psychological examination, TVA had no legitimate evidence – and certainly no significant evidence – that Plaintiff posed a direct threat to his own safety or the safety of others, or that Plaintiff could not safely perform his job duties.

Count Five: Requirement that Plaintiff Disclose All Medications

57. By requiring Plaintiff to disclose all medications that he was taking – regardless of whether the medication was likely to impair his ability to perform his job – as a condition of Plaintiff's return to work in April 2014, TVA violated 42 U.S.C. §12112(d)(4) inasmuch as such disclosure was likely to elicit information about Plaintiff's disability and was not job-related or consistent with business necessity.

Count Six: Prohibition Against Taking Marinol

58. Title I of the Americans with Disabilities Act ("ADA") prohibits an employer from refusing to make reasonable accommodations to the known mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. §12112(b)(5)(A). The ADA's reasonable accommodation requirement is incorporated by reference into the Rehabilitation Act. 29 U.S.C. §791(g).

59. Plaintiff's chronic depression, anxiety, and insomnia (hereinafter referred to as "disability") constitutes a disability as that term is defined within the ADA inasmuch as Plaintiff's

9

disability substantially limits the normal functioning of his brain, the ability to sleep, and the ability to concentrate, as compared to individuals in the general population.

60. Plaintiff was lawfully prescribed the medication Marinol to treat his disability.

61. TVA was aware that Plaintiff used Marinol to treat his disability.

62. Plaintiff, individually and/or through his medical providers Dr. Charles Adams and Dr. Brian Teliho, requested that TVA allow Plaintiff to continue using Marinol during his employment.

63. By prohibiting Plaintiff from using Marinol as a condition for his continued employment, TVA unreasonably refused such accommodation inasmuch as TVA could not demonstrate that Plaintiff posed a direct threat by continued use of Marinol while working.

Count Seven:  Wrongful Termination – Disability Discrimination

64. TVA unlawfully discriminated against Plaintiff because of his disability in terminating Plaintiff's employment in violation of 29 U.S.C. §791.  But for[1] the unlawful requirement that Plaintiff monthly disclose **all** of his medications, TVA would not have terminated Plaintiff's employment.

Count Eight:  Retaliation

65. Pleading in the alternative, TVA unlawfully retaliated against Plaintiff because of his EEO complaint of disability discrimination in terminating Plaintiff's employment in violation of 29 U.S.C. §791.

---

[1] Section 501 of "the Rehabilitation Act borrows the causation standard from the Americans with Disabilities Act of 1990. This borrowed provision of the ADA states that no person shall retaliate against an individual "*because* such individual has opposed any [discriminatory] act or practice." *Palmquist v. Shinseki*, 689 F.3d 66, 73–74 (1st Cir. 2012) (internal citations omitted) (emphasis supplied). *See also Pinkerton v. Spellings*, 529 F.3d 513, 516–17 (5th Cir. 2008) (holding that the "sole cause" standard under §504 of the Rehabilitation Act does not apply to claims brought under §501 of the Rehabilitation Act; the ADA causation standard incorporated by §501(g) governs claims brought under §501.)  "But-for" causation is the standard that the Sixth Circuit applies under the ADA. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012).

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

66. On May 23, 2014, Plaintiff filed a formal complaint of disability discrimination with Defendant's Equal Opportunity Compliance (EOC) department, which complaint was assigned EO File Number TVA-2014-0037. Within 180 days of filing his formal complaint, no hearing was ever held before the Equal Employment Opportunity Commission (EEOC) and no Final Agency Decision was ever issued. In fact, the EEOC has never held a hearing on Plaintiff's administrative claim, and no Final Agency Decision has ever been issued. Plaintiff therefore timely brings this action pursuant to 42 U.S.C. §2000e-16(c) and 29 C.F.R. §1614.407(b).

## VII. DAMAGES

67. As a result of the wrongful actions of TVA as described above, Plaintiff has suffered both emotionally and financially. In particular, Plaintiff experienced emotional pain, great suffering, and mental anguish as a result of TVA's unlawful actions described herein. In addition, Plaintiff lost and will continue to lose wages, employee benefits, and the chance at advancement within TVA because of TVA's unlawful actions. All of these damages were proximately caused by the aforementioned unlawful actions of TVA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process upon Defendant and require Defendant to answer within the time prescribed by law;

b. That upon the hearing of this cause, Plaintiff be awarded judgment for damages for lost wages and employee benefits which he has lost from the date of Defendant's discriminatory actions;

c. That the Court issue an injunction requiring Defendant to reinstate Plaintiff, or in the alternative, to award front pay in lieu thereof;

d. That Plaintiff be awarded additional compensatory damages, including damages for emotional pain, great suffering, and mental anguish, pursuant to 42 U.S.C. §1981a;

e. That Plaintiff be awarded attorney fees, the costs of this action, litigation expenses, and prejudgment interest, pursuant to 29 U.S.C. §794a;

f. That Plaintiff be awarded such other and further relief as the Court deems proper in order to make Plaintiff whole under the Rehabilitation Act, including any provisions that are incorporated thereto or therein; and

g. Plaintiff demands a jury to try all claims and issues triable by a jury, pursuant to, but not limited to, 42 U.S.C. §1981a(c).

**BURNETTE, DOBSON & PINCHAK**

By: s/ *Doug S. Hamill*
Doug S. Hamill, BPR No. 22825
Counsel for Plaintiff
711 Cherry Street
Chattanooga, Tennessee 37402
Tel: (423) 266-2121
Fax: (423) 266-3324
dhamill@bdplawfirm.com