UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ALEX HIXON,                          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        No. 1:19-cv-00120-CLC-SKL
                                     )
TENNESSEE VALLEY AUTHORITY           )
BOARD OF DIRECTORS,                  )
                                     )
            Defendant.               )

## PLAINTIFF'S SPECIAL REQUEST FOR JURY INSTRUCTIONS AND PROPOSED VERDICT FORM

Plaintiff, through counsel, pursuant to the Court's Scheduling Order (Doc. 18) and Order Amending Scheduling Order (Doc. 38) and E.D.TN L.R. 51.1, submits his special request for jury instructions and proposed verdict form.

Respectfully submitted,

**MIKEL & HAMILL PLLC**

By:___s/ Doug S. Hamill_____
        Doug S. Hamill, BPR No. 022825
        Counsel for Plaintiff
        620 Lindsay Street, Suite 200
        Chattanooga, TN 37403
        (423) 541-5400
        dhamill@mhemploymentlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By:___s/ Doug S. Hamill_____

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 1

### Plaintiff's Claims

In this lawsuit, Plaintiff Alex Hixon contends that his employer, Defendant Tennessee Valley Authority, subjected him to a series of unlawful medical and psychological examinations regarding his use of the drug Marinol, which was lawfully prescribed by his doctor to treat his chronic disabilities, namely anxiety and insomnia. Additionally, Mr. Hixon argues that his employer refused to grant his accommodation request of being allowed to continue taking Marinol while working. When TVA eventually cleared Mr. Hixon to return to work, it also required him, as a condition of continued employment, to monthly disclose all of his medications, which Mr. Hixon contends is unlawful. Finally, Mr. Hixon alleges that TVA later terminated his employment because of his disability and in retaliation of his prior complaints of disability discrimination.

All of Mr. Hixon's legal claims asserted in this lawsuit involve the Rehabilitation Act, which prohibits disability discrimination in federal employment.

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 2

## Rehabilitation Act Incorporates Provisions of the ADA

The Rehabilitation Act, which applies to employees of the federal government, incorporates certain workplace provisions of the Americans with Disabilities Act ("ADA").[1] "[T]he purpose of the ADA [is] to provide civil rights protections for persons with disabilities that are parallel to those available to minorities and women."[2] In the workplace, the ADA is designed to discourage employers from stereotyping employees with disabilities or making assumptions about their capabilities based on unfounded fear, prejudice, ignorance, or mythologies.[3] Rather, the ADA ensures that employers make employment decisions based upon relevant medical evidence and the disabled employee's actual abilities and characteristics.[4]

---

[1] 29 U.S.C. §791(f). Claims brought under the Rehabilitation Act are reviewed under the same standards that govern ADA claims. *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013); *Hale v. Johnson*, 245 F.Supp.3d 979, 985 (E.D. Tenn. 2017) ("cases addressing the ADA are generally relevant for purposes of resolving claims brought under the Rehabilitation Act").

[2] *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 331 (6th Cir. 2012) (citing H. Rep. No. 101–485(III) at 48 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445 at 471).

[3] *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 1999) (citations omitted); *Lehman v. St. Elizabeth Healthcare*, 2013 WL 1345369, at *6 (E.D. Ky. Apr. 1, 2013).

[4] *Holiday*, 206 F.3d at 643.

3

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 3

## ADA's Anti-Discrimination Provision

It is unlawful for an employer to discriminate against a qualified individual on the basis of disability in regard to termination, as well as other terms, conditions, and privileges of employment.[5] In certain circumstances, where an employee or job applicant is prescribed medication to treat a disability, being discriminated against because of the disability-related medication constitutes discrimination on the basis of disability.[6]

---

[5] 42 U.S.C. § 12112(a)

[6] *Breaux v. Bollinger Shipyards, LLC*, 2018 WL 3329059, at *10 (E.D. La. July 5, 2018) (employer's admission that it fired plaintiff because he did not "wean" himself off of Suboxone was "direct evidence that Bollinger made an employment decision because of Plaintiff's disability."); *id*. at *14 ("The disability alleged here is not just Plaintiff's opioid dependency, but the fact that he must take certain medications, namely Suboxone, to manage the condition."); *Bouchard v. Gen. Elec. Co.*, 2015 WL 7258477, at *7 (D. Me. Nov. 17, 2015) ("A reasonable jury could find a close enough nexus between being on prescribed medication and being disabled to find that discrimination on the basis of taking medication constitutes discrimination on the basis of disability."); *Huffman v. Turner Indus. Group, LLC*, 2013 WL 2244205, at *16 (E.D. La. May 21, 2013) ("As explained above, the disability alleged here is not just Plaintiff's impaired hand, but the fact that he must take certain medications to manage the pain and anxiety caused by his impaired hand. It is undisputed that Turner refused to re-hire Plaintiff because of his need to use narcotic and other medication. Therefore, Plaintiff has put forth sufficient evidence to allow a reasonable trier of fact to conclude that Turner refused to hire Plaintiff because of an alleged or perceived disability, and thereby defeat summary judgment on this issue."). *See also Pollard v. Drummond Co., Inc.*, 2015 WL 5306084, (N.D. Ala. Sept. 10, 2015) (methadone use for back pain); *Haynes v. City of Montgomery,* 2008 WL 4495711 (M.D. Ala. Oct. 6, 2008) (medications for generalized anxiety disorder).

4

# PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 4

## ADA's Medical Examination Claim

An employer is prohibited from requiring a medical examination or making "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."[7]  An employee does not have to prove that he is disabled to contest an allegedly improper medical examination or inquiry.[8]

An employer "who decides to require a medical [or psychological] examination must have a reasonable belief based on objective evidence that the employee's behavior threatens a vital function of the business."[9]  To show that an examination or inquiry is "job-related and consistent with business necessity," the employer has the burden of proving that either: (1) the employee's ability to perform the essential functions of the job is impaired; or (2) the employee poses a direct threat to himself or others.[10]

To constitute a "direct threat," the disability or disability-related medication usage (in this case, the use of Marinol) must present "a significant risk" to the health or safety of others.[11]  A significant risk means a "high probability of substantial harm; a speculative, remote, or slightly increased risk is insufficient."[12]  A direct threat determination must be based on an individualized assessment of the employee's present ability to safely perform the essential functions of the job, using "reasonable medical judgment that relies on the most current medical knowledge and/or the

---

[7] 42 U.S.C. § 12112(d)(4)(A); *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007).
[8] 42 U.S.C. § 12112(d)(4)(A); *Lee v. City of Columbus*, 636 F.3d 245, 252 (6th Cir. 2011).
[9] *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014).
[10] *Kroll*, 763 F.3d at 623 (citing *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007)).
[11] 42 U.S.C. §12111(3).
[12] *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 432 (6th Cir. 1999); *Siewertsen v. Worthington Steel Co.*, 134 F. Supp. 3d 1091, 1102 (N.D. Ohio 2015) (citing *Backhaus v. General Motors LLC,* 54 F.Supp.3d 741, 751 (E.D. Mich. 2014)).

best available objective evidence."[13]  An assessment based on the known possible side effects of a medication, as opposed to an individualized inquiry into an individual's present ability to perform his job functions, is insufficient.[14]  You may consider the following four factors in determining whether the disability or disability-related medication poses a direct threat: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm.[15]

The scope of an employee medical examination or inquiry must be appropriately narrow.[16] The law's allowance of a medical examination or inquiry "is not an excuse for every wide-ranging assessment of mental or physical debilitation that could conceivably affect the quality of an employee's job performance;" rather, the examination and the inquiry must be "restricted to discovering whether the employee can continue to fulfill the essential functions of the job.[17]  For example, "an employer may not request an employee's complete medical records under the disguise of job-relatedness and business necessity."[18]

If you find that TVA has proven, based upon a preponderance of the evidence, that Mr. Hixon's disability or disability-related medication usage caused his ability to perform the essential functions of his job to be impaired, or that it posed a direct threat to himself or others, then you must find in favor of TVA on the medical examination claims.  If you find that TVA has not proven that Mr. Hixon's disability or disability-related medication usage caused his ability to perform the

---

[13] 29 C.F.R. §1630.2(r); *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002).
[14] *Howard v. Norfolk S. Corp.*, 2020 WL 5569922, at *14 (N.D. Ala. Sept. 17, 2020); *Breaux v. Bollinger Shipyards, LLC*, 2018 WL 3329059, at *13 (E.D. La. July 5, 2018); *Pollard v. Drummond Co., Inc.*, 2015 WL 5306084, at *7 (N.D. Ala. Sept. 10, 2015); *EEOC v. Hussey Copper Ltd.*, 696 F. Supp. 2d 505, 520-21 (W.D. Pa. 2010); *Haynes v. City of Montgomery,* 2008 WL 4495711, at *4–5 (M.D. Ala. Oct. 6, 2008).
[15] 29 C.F.R. § 1630.2(r).
[16] *James v. Goodyear Tire & Rubber Co.*, 354 F. App'x 246, 249 (6th Cir. 2009).
[17] *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 812-13 (6th Cir. 1999).
[18] *Jackson v. Regal Beloit Am., Inc.*, 2018 WL 3078760, at *9 (E.D. Ky. June 21, 2018) (citing *Farmiloe v. Ford Motor Co.*, 277 F. Supp. 2d 778, 782-83 (N.D. Ohio 2002)).

6

essential functions of his job to be impaired, or that it posed a direct threat to himself or others, then you must find in favor of Mr. Hixon on the medical examination claims.

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 5

### Monthly Disclosure of All Medications Claim

As a separate claim in this lawsuit, Mr. Hixon contends that the requirement to monthly disclose all medications as a condition of continued employment violates the law.

An employer's requirement that an employee disclose his medications falls within the meaning of a disability-related inquiry under the law.[19] The instructions that I gave you regarding an employer-mandated medical or psychological examination apply equally to Mr. Hixon's claim regarding mandatory disclosure of all medications. That is to say that TVA has the burden of proving, based upon a preponderance of the evidence, that either: (1) Mr. Hixon's ability to perform the essential functions of the job is impaired; or (2) Mr. Hixon poses a direct threat to himself or others.[20]

If you find that TVA has proven that Mr. Hixon's ability to perform the essential functions of his job was impaired, or that he posed a direct threat to himself or others, then you must find in favor of TVA on the medication disclosure claim. If you find that TVA has not proven that Mr. Hixon's ability to perform the essential functions of his job was impaired, or that he posed a direct threat to himself or others, then you must find in favor of Mr. Hixon on the medication disclosure claim.

---

[19] 42 U.S.C. §12112(d)(4); *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1230-31 (10th Cir. 1997); *Lewis v. Gov't of the Dist. of Columbia*, Case No. 15-521(JEB) at *23 (D. D.C. Dec. 7, 2015); *Stahly v. South Bend Public Trans. Corp.*, Case No. 3:10-cv-257-JVB, at *13 (N.D. Ind. Jan. 3, 2013). "Obviously, asking an employee whether he is taking prescription drugs or medication, or questions "seek[ing] information about illnesses, mental conditions, or other impairments [an employee] has or had in the past[,]" trigger the ADA's (and hence the Rehabilitation Act's) protections." *Lee v. the City of Columbus*, 636 F.3d 245, 254 (6th Cir. 2011) (internal citations omitted). See also EEOC Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, Part A, Question #8 (July 27, 2000). "A 'disability-related inquiry' is a question that is likely to elicit information about a disability, such as asking employees about . . . the kinds of prescription medications they are taking."
[20] *Kroll*, 763 F.3d at 623 (citing *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007)).

8

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 6

### Reasonable Accommodation Claim

Mr. Hixon contends that he requested permission to continue using Marinol to treat his disabilities and that TVA's refusal was an unlawful denial of a reasonable accommodation.

The term "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."[21]

To succeed on his reasonable accommodation claim, Mr. Hixon must prove, by a preponderance of the evidence, that he has a "disability" as that term is defined under the ADA; that he is "otherwise qualified" for the position despite his disability, with or without accommodation; that he requested an accommodation; and that the accommodation is objectively reasonable.[22] If Mr. Hixon meets his burden, then TVA employer will bear the burden of proving that the proposed accommodation will impose an undue hardship upon the employer.[23]

Mr. Hixon must first prove that he has a "disability" as that term is defined under the ADA. Under the ADA, the term "disability" is meant to be understood in favor of broad coverage.[24] A person does not need to present scientific, medical, or statistical evidence to prove that he has a disability.[25] Credible testimony from the Plaintiff or others can be sufficient to prove a disability.[26]

---

[21] 42 U.S.C. § 12112(b)(5)(A); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).

[22] *Fisher v. Nissan North America, Inc.*, 951 F.3d 415, 417 (6th Cir. 2020) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004).

[23] *Id*.

[24] 42 U.S.C. §1202(4)(A)

[25] 29 C.F.R. §1630.2(j)(1)(v)

[26] *Williams v. AT & T Mobility Servs., LLC*, 186 F. Supp. 3d 816, 824 (W.D. Tenn. 2016) ("[T]he *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities* provides that "[e]xpert testimony about substantial limitation is not necessarily required. Credible testimony from the individual with a disability and his/her family members, friends, or coworkers may suffice."); *see also Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300–01 (6th Cir. 2019) (testimony of plaintiff and her daughter sufficient).

9

The relevant time period for determining whether a person has a disability as defined by the ADA is at the time of the alleged discriminatory act.[27]

Under the ADA, a person has a "disability" in one or more of three circumstances: "(1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment[.]"[28]  In determining whether a person's impairment substantially limits a major life activity, you should compare his ability to perform a major life activity with that of most people in the general population.[29]  Whether an impairment substantially limits a major life activity is "not meant to be a demanding standard."[30]  Stated another way, "[a]n impairment need not prevent, or significantly restrict, the individual from performing a major life activity in order to be considered substantially limiting" under the ADA.[31]

In this case, Mr. Hixon contends that his chronic depression, anxiety, and insomnia are disabilities under the ADA.  He alleges that these impairments substantially limit his ability to concentrate and sleep.  Federal regulations list concentrating and sleeping as a major life activity.[32]  Furthermore, federal regulations list major depressive disorder as a recognized disability that can substantially limit a person's brain function.[33]

In addition to an actual disability, the ADA's definition of disability also includes a person with a record of a disability.  An individual has "a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially

---

[27] *Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998); *Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795, 801–02 (E.D. Mich. 2014); *Hurst v. Lilly Co.*, 2017 WL 5180434, at *7 (E.D. Tenn. Nov. 8, 2017).
[28] 42 U.S.C. §12101(1)
[29] 29 C.F.R. §1630.2(j)(1)(ii)
[30] 29 C.F.R. §1630.2(j)(1)(I) and (iii)
[31] 29 C.F.R. §1630.2(j)(1)(ii)
[32] 29 C.F.R. §1630.2(i)(1)(ii)
[33] 29 C.F.R. §1630.2(j)(3)(iii)

limits one or more major life activities."[34]  Like an actual disability, the definition of a person having a record of disability is to be "construed broadly" for purposes of coverage under the ADA.[35]  A person with a record of a disability includes "people who have recovered from previous disability conditions...but who may remain vulnerable to the fears and stereotypes of their employers."[36]

Finally, the definition of disability under the ADA includes a person who is regarded as having an impairment.  "[A]n individual is 'regarded as having such an impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity."[37]

Next, Mr. Hixon has the burden of proving that he was qualified to perform the essential functions of his job with or without a reasonable accommodation.[38] A person is qualified for a job under the ADA if he has the skill, experience, education, or other requirements for the job.[39]

Finally, Mr. Hixon has the burden of proving that he requested an accommodation for his disability and that the accommodation was objectively reasonable.  An accommodation request can be made directly by the employee or someone acting on the employee's behalf, such as the

---

[34] 29 C.F.R. § 1630.2(k)(1)
[35] 29 C.F.R. § 1630.2(k)(2)
[36] *Neely v. Benchmark Family Services,* 640 Fed. Appx. 429, 435 (6th Cir. 2016) (quoting *Spence v. Donahoe,* 515 Fed. Appx. 561, 570 (6th Cir. 2013)).
[37] 29 C.F.R. § 1630.2(l)(1)

[38] 42 U.S.C. § 12111(8)
[39] 29 C.F.R. §1630.2(m)

11

employee's doctor.[40]  An accommodation is considered objectively reasonable if it seems reasonable on its face when requested.[41]

If Mr. Hixon meets his burden of proving these elements, then the burden shifts to TVA to prove that the proposed accommodation (in this case, the continued use of Marinol) will impose an undue hardship upon the employer.[42]  Undue hardship means, with respect to the provision of an accommodation, significant difficulty or expense.[43]  TVA does not contend Mr. Hixon's use of Marinol would have required it to incur significant expense.  In determining whether Mr. Hixon's Marinol use would cause an undue hardship, you may consider various factors, including the type of operation of TVA, including the composition, structure and functions of the workforce, the impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.[44]

If you find that Mr. Hixon has met his burden and then TVA failed to meet its burden, then you must find in favor of Mr. Hixon on the accommodation claim.  If you find that Mr. Hixon failed to meet his burden or if you find that TVA met its burden, then you must find in favor of TVA on the accommodation claim.

---

[40] "[S]omeone other than the disabled person may request an accommodation on behalf of the disabled person." *Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621, 629 (W.D. Mich. 2009) (citing *EEOC Compliance Manual,* Enforcement Guidance for Psychiatric Disabilities, at 20–21) (health professional may request a reasonable accommodation on behalf of an individual with a disability).
[41] *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002)
[42] *Fisher v. Nissan North America, Inc.*, 951 F.3d 415, 417 (6th Cir. 2020) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)).
[43] 29 C.F.R. § 1630.2(p)(1)
[44] 29 C.F.R. § 1630.2(p)(2)

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 7

### Discriminatory Termination Claim

Mr. Hixon contends that TVA terminated his employment because of his disability. To succeed on his discriminatory termination claim under the ADA, Mr. Hixon must prove, by a preponderance of the evidence, that he (1) has a disability under the ADA; (2) is otherwise qualified to perform the essential functions of his job, with or without accommodation, and (3) that TVA terminated his employment because of his disability.[45]

If you find that the Plaintiff, Alex Hixon, has proven all three of these elements by a preponderance of the evidence, your verdict must be in Mr. Hixon's favor. If you find that Mr. Hixon has failed to prove all three of these elements by a preponderance of the evidence, your verdict must be in favor of the Defendant, TVA.

---

[45] *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016), *abrogated on other grounds by Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308 (6th Cir. 2019).

13

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 8**

**No Requirement to Show Animus Toward Disabled**

In order to prove his disability discrimination claim, Mr. Hixon is not required to show that TVA harbored ill will against disabled people in general. An employer violates the ADA whenever it takes an adverse employment action against an individual on the basis of the individual's disability. Proof of ill will or animus toward the disabled is not required.[46]

---

[46] *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018).

14

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 9

### Retaliation Claim

Mr. Hixon contends that TVA terminated his employment because of his legally protected discrimination complaint.

The ADA prohibits an employer from retaliating against an employee because such individual has opposed any discriminatory act or practice.[47] Filing an EEO complaint alleging disability discrimination is considered protected activity under the law.[48]

To succeed on his retaliation claim, Mr. Hixon must prove, by a preponderance of the evidence, that: (1) he complained of disability discrimination; (2) he was terminated; and (3) TVA terminated his employment because of his complaint of disability discrimination.[49]

In determining whether a causal connection exists between Mr. Hixon's complaint and termination, you may consider the closeness in time between the two events, but that fact alone is usually not enough to demonstrate retaliation.[50]

If you find that the Plaintiff, Alex Hixon, has proven all three of these elements by a preponderance of the evidence, your verdict must be in Mr. Hixon's favor. If you find that Mr. Hixon has failed to prove all three of these elements by a preponderance of the evidence, your verdict must be in favor of the Defendant, TVA.

---

[47] 42 U.S.C. § 12203(a)

[48] *Norden v. Samper*, 503 F. Supp. 2d 130, 157 (D.D.C. 2007); *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004).

[49] O'Malley et al., *Federal Jury Practice & Instructions*, § 171.25 (6th ed.) (modified); jury charge given in *Elizabeth Hawthorne v. University of Tennessee*, Case No. 1:15-cv-55 (E.D. Tenn. 2016) (McDonough, J.).

[50] Jury charge given in *Elizabeth Hawthorne v. University of Tennessee*, Case No. 1:15-cv-55 (E.D. Tenn. 2016) (McDonough, J.).

15

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 10

## Causation Standard[51]

With respect to his discriminatory termination claim, Mr. Hixon must prove that TVA terminated his employment because of his disability. Likewise, with respect to his retaliation claim, Mr. Hixon must prove that TVA terminated his employment because of his disability discrimination complaint.

Under the ADA, the phrase "because of" does <u>not</u> mean that Mr. Hixon's disability or discrimination complaint must be the sole or exclusive cause.[52] Nor does it mean that Mr. Hixon's disability or discrimination complaint must be the main or primary cause of TVA's decision to terminate Mr. Hixon's employment.[53] Rather, Mr. Hixon's disability or discrimination complaint must be a cause or factor "that made a difference."[54] An employer "cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as [Mr. Hixon's disability or discrimination complaint] was one but-for cause of that decision, that is enough" proof for establishing liability under the law.[55]

---

[51] Section 501 of the Rehabilitation Act borrows the causation standard from the Americans with Disabilities Act of 1990. 29 U.S.C. §791(g). The "sole cause" standard under §504 of the Rehabilitation Act does not apply to claims brought under §501 of the Rehabilitation Act; rather, the ADA causation standard incorporated by 29 U.S.C. §791(g) governs claims brought under §501. *Pinkerton v. Spellings*, 529 F.3d 513, 516–17 (5th Cir. 2008). For retaliation claims, this borrowed provision of the ADA states that no person shall retaliate against an individual "*because* such individual has opposed any [discriminatory] act or practice." *Palmquist v. Shinseki*, 689 F.3d 66, 73–74 (1st Cir. 2012) (internal citations omitted) (emphasis supplied).

[52] *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012) ("The sole-cause standard in the end is a creature of the Rehabilitation Act, and that is where we should leave it. The standard does not apply to claims under the ADA.").

[53] *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) (No doubt, Congress could have taken a more parsimonious approach. As it has in other statutes, it could have added "solely" to indicate that actions taken "because of" the confluence of multiple factors do not violate the law. Cf. 11 U.S.C. § 525; 16 U.S.C. § 511. Or it could have written "primarily because of" to indicate that the prohibited factor. Cf. 22 U.S.C. § 2688. But none of this is the law we have [under Title VII].")

[54] *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (citing *Hazen Paper*, 507 U.S. 604, 610 (1993)).

[55] *Bostock*, 140 S. Ct. at 1739. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) ("That leaves one question: what standard should trial courts use in instructing juries in ADA cases? *Gross* points the way. The ADEA and the ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for' cause of the employer's adverse decision. The same standard applies to both laws.").

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 11

### Pretext

TVA may have given one or more explanations as to why it terminated Mr. Hixon's employment. If you find that TVA's explanations have no basis in fact, or that the explanations did not actually motivate the action, or that the explanations were insufficient to motivate the action, then TVA's reasons are considered pretextual.[56] If you do not believe that TVA's stated reasons are true, you are free – but not required – to infer an unlawful motive from TVA's false or pretextual reason for its actions.[57] Contradictory, after-the-fact explanations for an employment decision can be evidence of pretext.[58]

---

[56] *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 895 (6th Cir. 2016)
[57] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)
[58] *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996)

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 12

### Compensatory Damages

If you find in favor of Plaintiff Alex Hixon on one or more of his claims, then you shall determine what amount of damages, if any, to award to Plaintiff on his claim. I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether the Defendant TVA should in fact be held liable for damages.

You may award damages only for injuries that the Plaintiff proves were caused by the Defendant's allegedly wrongful conduct. The damages you award must be fair compensation – no more and no less.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that the Plaintiff prove his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

You may award a sum of money to compensate the Plaintiff for any embarrassment, humiliation, or emotional distress the Plaintiff actually suffered as a result of the Defendant's wrongful actions. [The job of determining whether and what amount to award for lost wages is my job as judge. Thus, you are not to include any amount of economic loss in your award, should you choose to award any damages.]

The words "embarrassment" and "humiliation" are used in their everyday meaning. Not every embarrassment or humiliation is compensable. Embarrassment and humiliation are

18

compensable only when a reasonable person with ordinary sensibilities under the same or similar circumstances would be embarrassed or humiliated.

There is no mathematical formula for computing reasonable compensation for embarrassment and humiliation, nor is the opinion of any witness required as to the amount of such compensation. In making an award for such damages, you must use your best judgment and establish an amount of damages that is fair and reasonable in light of the evidence before you.[59]

---

[59] This instruction is taken from the jury charge in the case of *Andrea Herring v. SCI Tennessee Funeral Services, LLC*, 2:15-cv-280 (E.D. Tenn. Feb. 1, 2018) (Greer, J.) (Title VII claim, modified).

## PROPOSED VERDICT FORM

We, the jury, unanimously answer the following questions.

1. Do you find in favor of the Plaintiff Alex Hixon in regard to his January 2014 medical examination claim?

    _____ YES            _____ NO

2. Do you find in favor of the Plaintiff Alex Hixon in regard to his January 2014 psychological examination claim?

    _____ YES            _____ NO

3. Do you find in favor of the Plaintiff Alex Hixon in regard to his March 2014 medical examination claim?

    _____ YES            _____ NO

4. Do you find in favor of the Plaintiff Alex Hixon in regard to his March 2014 psychological examination claim?

    _____ YES            _____ NO

5. Do you find in favor of the Plaintiff Alex Hixon in regard to his monthly full medication disclosure claim?

    _____ YES            _____ NO

6. Do you find in favor of the Plaintiff Alex Hixon in regard to his reasonable accommodation (continued use of Marinol while working) claim?

    _____ YES            _____ NO

7. Has the Plaintiff Alex Hixon proven that TVA terminated his employment because of his disability?

    _____ YES            _____ NO

8. Has the Plaintiff Alex Hixon proven that TVA terminated his employment because of his complaint of disability discrimination?

_____ YES                 _____ NO

*If you answered "NO" to ALL of the above questions, then your deliberations are at an end. Please have the foreperson sign and date this form and return it to the court officer. If you answered "YES" to one or more of the above questions, please proceed to the next question.*

9. Under the law as given to us in the Court's instructions, we award the following damages to the Plaintiff Alex Hixon:

Emotional damages:        $_____

Sign and date below and alert the Court Officer that you have reached a verdict.

_____
Jury Foreperson (Print Name)

_____
Jury Foreperson (Signature)

_____
Date

21